UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Criminal Action |
| | * | No. 16-144 |
| Plaintiff, | * | |
| | * | Section "MAG" |
| v. | * | |
| | * | New Orleans, Louisiana |
| PEGGY ANN FULFORD, | * | December 16, 2016 |
| | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * *


INITIAL APPEARANCE,
BEFORE THE HONORABLE JOSEPH C. WILKINSON, JR.,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:          United States Attorney's Office
                            By:  JEFFREY RYAN MCLAREN, ESQ.
                            650 Poydras Street, Suite 1600
                            New Orleans, Louisiana 70130

Court Audio Operator:        (Magistrate Clerical)

Transcriptionist:            Ann B. Schleismann
                            c/o U.S. District Court
                            500 Poydras Street, Room C-151
                            New Orleans, Louisiana 70130
                            (504) 589-7724


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

P R O C E E D I N G S

(Friday, December 16, 2016)

1
2
3    THE CLERK:  Criminal Action 2016-144, <u>United States</u>
4    <u>of America v Peggy Ann Fulford</u> set for an initial appearance on
5    an Indictment and Warrant out of the Southern District of
6    Texas.
7    MR. MCLAREN:  Ryan McLaren for the United States.
8    THE COURT:  Good morning.
9    Ms. Fulford, this is your initial appearance before
10   the Court.
11   DEFENDANT FULFORD:  Yes, sir.
12   THE COURT:  The purpose of this hearing is to advise
13   you of the nature of the charges pending against you, to
14   determine who will be representing you in connection with these
15   proceedings, and to determine the bond if any to be set, and
16   set any future dates that may be necessary.
17   You were charged in this case by way of an Indictment
18   returned in the United States District Court for the Southern
19   District of Texas, the Houston Division.  It's an eight-count
20   Indictment for wire fraud, mail fraud, interstate
21   transportation of stolen property, and money laundering.  In
22   the Indictment the grand jury charges in Counts 1 and 2
23   violations of 18 U.S.C. Sections 1343 and 2, wire fraud.  The
24   grand jury alleges that the Defendant, Peggy Ann Fulford, also
25   known as Peggy King, Peggy Williams, Peggy Barnard, Peggy

1    Simpson, Peggy Rivers, Devon Cole, and Devon Barard was an

2    individual who resided in various places, including the

3    Southern District of Texas, between in or about 2011 until in

4    or about 2013.

5           At various times Fulford said she was married to FK,

6    SW, and RF.  Fulford and husband FK were associated with a

7    company called "Premier Management" that purported to be the

8    agent for at least one professional athlete.  "Premier

9    Financial Management, Inc." was incorporated in the State of

10   Georgia, and Fulford was listed as its Chief Financial Officer.

11          King Management Group and Associates, LLC was

12   organized under the laws of the State of Florida.  Fulford was

13   listed as its registered agent and managing member.

14          Fulford exercised authority and control over dozens

15   of bank accounts including one, two, three, four, five -- six

16   listed -- six Wells Fargo bank accounts whose account numbers

17   are listed in Paragraphs 5(a) through (e) of the Indictment.

18          The grand jury alleges that from in or about 2011 and

19   continuing through in or about 2014 in the Houston Division of

20   the Southern District of Texas and elsewhere the Defendant,

21   Peggy Ann Fulford, aided and abetted by other known and unknown

22   to the grand jury, did knowingly execute and attempt to execute

23   a scheme and artifice to defraud and to obtain money and

24   property from client victims by means of materially false and

25   fraudulent pretenses, representations, and promises.

1          From in or around 2001 until in or about 2014,

2    Fulford obtained and then misappropriated millions in funds

3    entrusted to her by at least four professional athletes,

4    including Heisman trophy winner Ricky Williams, T.H., and two

5    others victims.  Fulford falsely told victims that she would

6    use their money exclusively to pay their bills, including their

7    income tax payments, and to make retirement investments for

8    them.  Instead, Fulford diverted millions of victim funds that

9    she laundered through dozens of bank accounts to pay for her

10   own personal expenses.  Fulford communicated with victims in

11   person, by phone, and by email, inducing them to open or give

12   her access to bank accounts which she raided and used for

13   personal expenses such as luxury cars, real estate, private

14   school tuition for her children, jewelry, and airline tickets.

15          Fulford falsely told victims that she graduated from

16   Harvard Law School and Harvard Business School and at various

17   times that she had made millions on Wall Street, made millions

18   by buying and selling hospitals, or made millions on real

19   estate in the Bahamas.  Fulford either never requested a fee or

20   told victims that she was providing her services for free

21   because she already had millions and just wanted to protect the

22   athletes from losing their money.  Fulford failed to inform the

23   victims that she used most of their money, or intended to use

24   most of their money for her own personal purposes.

25          On or about the dates listed in the Indictment within

1    the Houston Division of the Southern District of Texas and

2    elsewhere the Defendant for purposes of executing the scheme

3    and artifice to defraud, and attempting to do so, did knowingly

4    transmit and cause to be transmitted by means of wire

5    communications in interstate and foreign commerce, certain

6    writings, signs, signals, pictures, and sounds as more

7    particularly described below:

8            Count 1, on April 30, 2014 closing documents for a

9    real estate sale in Houston, Texas, emailed from Infinity Title

10   in Houston, to Defendant Fulford in Florida;

11           Count 2, May 1, 2014, wire transfer of $279,417.62

12   from Infinity Title Bank account in Texas to WF061 outside the

13   State of Texas, all in violation of Title 18, U.S.C. Sections

14   1343 and 2.

15           Count 3 alleges mail fraud in violation of 18 U.S.C.

16   Section 1341 and 2.  The Indictment reincorporates or re-

17   alleges Paragraphs 1 through 7 of the Indictment states that

18   from in or about 2001 and continuing through in or about 2014,

19   in the Houston Division of the Southern District of Texas and

20   elsewhere, the Defendant aided and abetted by others known and

21   unknown to the grand jury did knowingly execute and attempt to

22   execute a scheme and artifice to defraud and to obtain money

23   and property from client victims by means of materially false

24   or fraudulent pretenses, representations, and promises

25   utilizing private and commercial carriers.

1            The Indictment re-alleges Count 7 and then states

2     that on or about the specified dates within the Southern

3     District of Texas, the Defendant for purposes of executing the

4     scheme and artifice to defraud, and attempting to do so, did

5     knowingly send mail matter utilizing private and commercial

6     carriers.  Specifically Count 3, April 30th, 2014, mail matter

7     from Florida to Texas containing closing documents related to

8     sale of real estate in violation of 18 U.S.C. Sections 1341 and

9     2.

10            Count 4 charges violation of 18 U.S.C. Section 2314,

11     interstate transportation of stolen property.  Count 4

12     reincorporates the allegations of the remainder of the

13     Indictment and states that from on or about 2001 and continuing

14     to on or about 2014, in the Southern District of Texas and

15     elsewhere, the Defendant, Peggy Ann Fulford, did knowingly

16     transport, transmit, and transfer in interstate commerce, and

17     caused to be transported, transmitted, and transferred in

18     interstate commerce, securities, or money, the value of which

19     exceeded $5,000, specifically, $200,000 of victim L.H.'s money

20     from Montana to Texas, knowing the same to have been obtained

21     by fraud, all in violation of Section 2314.

22            Counts 5 through 8 charge violations of 18 U.S.C.,

23     Sections 1957 and 2, money laundering.  The remainder of the

24     Indictment is re-alleged in this count and states that on or

25     about the dates specified below in the Houston Division of the

1   Southern District of Texas and elsewhere, the Defendant, Peggy

2   Ann Fulford, aided and abetted by others known and unknown to

3   the grand jury, did knowingly engage in and attempt to engage

4   in monetary transactions by, through, and to financial

5   institutions affecting interstate commerce, in criminally

6   derived property of a value greater than $10,000 each, by

7   making and causing to be made deposits, withdrawals, transfers,

8   and exchanges of funds and monetary instruments in the amounts

9   specified below, such property having been derived from

10  specified unlawful activity, specifically wire fraud, mail

11  fraud, and interstate transportation of stolen property, in

12  violation of 18 U.S.C., Sections 1343, 1341, and 2314.

13          Specifically Count 5, February 26, 2013, transfer of

14  $200,000 from WF514 to WF567; Count 6, March 14, 2013, transfer

15  of $90,000 WF245 to WF567; Count 7, March 14, 2013, transfer of

16  $300,000 from WF567 to WF105; Count 8, March 15, 2013, purchase

17  of a cashier's check for $296,334.95 with funds from WF105, all

18  in violation of Title 18, U.S.C., Sections 1957 and 2.

19          The Indictment also contains two notices of criminal

20  forfeiture in which the United States gives notice to the

21  Defendant that in the event of conviction of the offenses

22  alleged in Counts 1 through 4, the United States intends to

23  seek forfeiture of all property real or personal which

24  constitutes as derived from proceeds traceable to these

25  offenses.  The Defendant is notified that the criminal

1   forfeiture also applies to any conviction under Counts 5

2   through 8 and that a money judgment upon conviction may be

3   imposed equal to the total value of the property subject to

4   forfeiture.

5          The Defendant is also notified that in the event that

6   any property subject to forfeiture as a result of any act or

7   omission of the Defendant cannot be located upon exercise of

8   due diligence; has been transferred or sold to, or deposited

9   with a third person; placed beyond the jurisdiction of the

10  Court; substantially diminished in value; or commingled with

11  other property that cannot be divided without difficulty, it is

12  the intent of the United States to seek forfeiture of any other

13  property of the Defendant up to the total value of the property

14  pursuant to 21 U.S.C., Section 853(p), and 18 U.S.C., Section

15  982(b)(1) and 28 U.S.C., Section 2461(c).

16         Ms. Fulford, do you understand what you're charged

17  with in this case?

18         DEFENDANT FULFORD:  Not really, but I'm --

19         THE COURT:  You're charged with fraud --

20         DEFENDANT FULFORD:  Uh-huh (affirmative response).

21         THE COURT:  -- obtaining money by fraud, transporting

22  stolen property across state lines, and money laundering.  Do

23  you understand?

24         DEFENDANT FULFORD:  I'm very, very, very shocked.

25         THE COURT:  All right.

1          DEFENDANT FULFORD:  That's all I can say.

2          THE COURT:  Well, do you understand what you're

3  charged with?

4          DEFENDANT FULFORD:  Yes, I do now.

5          THE COURT:  Have you received a copy of the

6  Indictment that's been filed against you?

7          DEFENDANT FULFORD:  I just did.

8          THE COURT:  Mr. McLaren, would you please advise the

9  Defendant the maximum penalties she faces in this case if she's

10  found guilty or she pleads guilty?

11          MR. MCLAREN:  Yes, Your Honor.

12          Ms. Fulford, for the wire fraud counts you face a

13  maximum of up to 20 years, a fine of up to $250,000, a term of

14  supervised release of up to three years, and a $100 special

15  assessment for each count of conviction.

16          For the mail fraud count, Count 3, you face up to 20

17  years of imprisonment, a fine of up to $250,000, supervised

18  release of up to three years, and a $100 special assessment for

19  each count of conviction.

20          For Count 4, the money laundering count, you face

21  imprisonment of up to ten years, and fine of up to $250,000,

22  supervised release of up to three years, and a $100 special

23  assessment for each count of conviction.

24          And for Counts 5 through 8, the stolen property

25  counts, you face imprisonment of up to ten years, a fine of up

1   to $250,000, supervised release of up to three years, and a

2   $100 special assessment for each count of conviction.

3            THE COURT:  You understand that those are the maximum

4   penalties you face in this case?

5            DEFENDANT FULFORD:  Yeah.

6            THE COURT:  You understand the maximum penalties as

7   Mr. McLaren just outlined them?

8            DEFENDANT FULFORD:  Uh-huh (affirmative response).

9            THE COURT:  All right.  Ms. Fulford, you have the

10  right to remain silent.  You're not required to make a

11  statement.  Any statement that you do make may be used against

12  you.  If you start to make a statement you can stop at any

13  time.  If you make a statement of any sort you need not say

14  anything more.  Do you understand your right to remain silent?

15           DEFENDANT FULFORD:  Yes, I do, sir.

16           THE COURT:  In addition you have a constitutional

17  right to be represented by an attorney at every stage of these

18  proceedings.  You have the right to consult with a lawyer

19  before any questioning.  Now even though you may choose to give

20  up your right to a lawyer today, you may choose to have one at

21  later proceedings.  If you cannot afford to hire a lawyer the

22  Court will appoint a lawyer to represent you.  Do you

23  understand your right to a lawyer?

24           DEFENDANT FULFORD:  Yes, sir.

25           THE COURT:  Ms. Fulford, do you plan to hire your own

1  lawyer or do you want the Court to appoint one to represent

2  you?

3  　　　　　DEFENDANT FULFORD:  I don't know.  I guess the Court

4  can appoint one for me.

5  　　　　　THE COURT:  All right.  The Court can appoint a

6  lawyer to represent you only if you qualify as a financial

7  matter to have a lawyer appointed to represent you.

8  　　　　　DEFENDANT FULFORD:  Okay.

9  　　　　　THE COURT:  In order to determine if you qualify I

10 have to ask you some questions about your finances and your

11 answers must be under oath.

12 　　　　　DEFENDANT FULFORD:  They are.

13 　　　　　THE COURT:  Therefore, the Clerk is going to

14 administer the oath.

15 　　　　　DEFENDANT FULFORD:  Okay.

16 　　　　　**DEFENDANT PEGGY ANN FULFORD, SWORN**

17 　　　　　THE COURT:  Ms. Fulford, I want you to keep in mind

18 that your answers to my questions are under oath.  Therefore,

19 they may be the basis of a perjury prosecution --

20 　　　　　DEFENDANT FULFORD:  Okay.

21 　　　　　THE COURT:  -- if you intentionally answer any of my

22 questions falsely.  So, I want you to be careful.

23 　　　　　DEFENDANT FULFORD:  Yes.

24 　　　　　THE COURT:  Any question that I ask that might have

25 something to do with your case does not have to be answered by

1   you.

2          DEFENDANT FULFORD:  Okay.

3          THE COURT:  The only reason I ask you these questions

4   is to determine if you qualify to have a lawyer appointed to

5   represent you, not to ask you about your case.  Do you

6   understand?

7          DEFENDANT FULFORD:  Yes, sir.

8          THE COURT:  How old are you, ma'am?

9          DEFENDANT FULFORD:  I'm 58.

10         THE COURT:  What is your full --

11         DEFENDANT FULFORD:  I just turned 58, I was 57 --

12         THE COURT:  What is your full name?

13         DEFENDANT FULFORD:  It's Peggy Ann Fulford.

14         THE COURT:  Do you understand the nature of these

15   proceedings?

16         DEFENDANT FULFORD:  Yes.

17         THE COURT:  Are you suffering any mental or physical

18   condition that impairs your ability to understand me or to

19   participate in these proceedings?

20         DEFENDANT FULFORD:  No, sir.

21         THE COURT:  Are you taking any medication at the

22   present time?

23         DEFENDANT FULFORD:  No, sir.

24         THE COURT:  Ms. Fulford, did you give some

25   information about your finances to one of our officers

13

```
 1   earlier --

 2            DEFENDANT FULFORD:  Yes.

 3            THE COURT:  -- today?

 4            DEFENDANT FULFORD:  Yes, I did, sir.

 5            THE COURT:  He tried to write down the information

 6   accurately on that piece of paper.

 7            DEFENDANT FULFORD:  Uh-huh (affirmative response).

 8            THE COURT:  I want you to review the piece of paper.

 9            DEFENDANT FULFORD:  Uh-huh (affirmative response).

10            THE COURT:  Tell me if the information contained on

11   it is true and accurate, and if that's your signature that

12   appears at the bottom of the page.

13            DEFENDANT FULFORD:  Yes, sir.

14            THE COURT:  Everything is accurate?

15            DEFENDANT FULFORD:  Yes, sir.

16            THE COURT:  You've signed it?

17            DEFENDANT FULFORD:  Yes, sir.

18            THE COURT:  It seems like you have an amount of money

19   in a bank account that is more than you need to pay your bills.

20   Is any of that available to pay a lawyer?

21            DEFENDANT FULFORD:  The $4,500?

22            THE COURT:  Yes, ma'am.

23            DEFENDANT FULFORD:  Well, that is for my bills.  I

24   mean you know usually I pay my bills with it.

25            THE COURT:  Right.
```

1          DEFENDANT FULFORD:  I have about $4,500 right now

2     because I was given some money from my ex-husband for Christmas

3     for my children --

4          THE COURT:  All right.

5          DEFENDANT FULFORD:  -- any myself.

6          THE COURT:  Do you have any additional expenses

7     beyond those that are -- I mean you don't -- you must have some

8     expenses for something like that food --

9          DEFENDANT FULFORD:  Well, food, he didn't ask me

10    about those.  I didn't even think about that.

11         THE COURT:  Well, you know he's asking you generally

12    about your expenses.

13         DEFENDANT FULFORD:  Right.

14         THE COURT:  So you've got to pay for food, right?

15         DEFENDANT FULFORD:  Yes.

16         THE COURT:  Does anybody live with you who is

17    dependent upon you for support?

18         DEFENDANT FULFORD:  No.  My -- no.

19         THE COURT:  You mentioned your children.  Are they

20    grown?

21         DEFENDANT FULFORD:  My son is 20.  He goes to college

22    here and his father pays his support.

23         THE COURT:  All right, he doesn't depend on you for

24    any support?

25         DEFENDANT FULFORD:  No, sir.

15

1              THE COURT:  You don't have any insurance bills that

2   you have to pay for a car or anything like that?

3              DEFENDANT FULFORD:  I gave the car at the bottom.

4              THE COURT:  Yeah, I know.  You have -- I know.  Do

5   you have --

6              DEFENDANT FULFORD:  Car insurance?

7              THE COURT:  Yeah, car insurance.

8              DEFENDANT FULFORD:  Yeah, I do.

9              THE COURT:  All right.

10             DEFENDANT FULFORD:  I have car insurance.

11             THE COURT:  So you've got some other expenses that

12   you have to pay --

13             DEFENDANT FULFORD:  Uh-huh (affirmative response).

14             THE COURT:  -- other than these that you've listed.

15   They include car insurance.

16             DEFENDANT FULFORD:  Right.

17             THE COURT:  They include food.

18             DEFENDANT FULFORD:  Right.

19             THE COURT:  Okay.

20             DEFENDANT FULFORD:  And clothing.

21             THE COURT:  Clothing.

22             DEFENDANT FULFORD:  Right.

23             THE COURT:  Do you have any other loans that you pay?

24             DEFENDANT FULFORD:  Just the credit cards, sir.

25             THE COURT:  All right.  All right, because it appears

1    that the Defendant's expenses, monthly expenses exceed her

2    monthly income and that her cash on hand is just enough to pay

3    these bills, I'm going to find that she's entitled to appointed

4    counsel --

5                    DEFENDANT FULFORD:  Thank you.

6                    THE COURT:  -- and I appoint the Federal Public

7    Defender to represent her in this case.

8                    DEFENDANT FULFORD:  Thank you, sir.

9                    THE COURT:  Does the Government have a position as to

10   bond?

11                   MR. MCLAREN:  Your Honor, my understanding from

12   communications with the Southern District of Texas is that they

13   do not seek detention.

14                   THE COURT:  All right.

15                   MR. MCLAREN:  However, they do have a number of

16   specific conditions that they request.

17                   THE COURT:  All right.  Have you discussed these

18   potential conditions with Mr. Felix of our office?

19                   MR. MCLAREN:  Yes, I have.

20                   MR. FELIX:  Briefly, Your Honor.

21                   THE COURT:  Do you need a few more minutes to

22   consider this, Mr. Felix?

23                   MR. FELIX:  We just met her a few minutes ago and the

24   information she provided is very minimal thus far.  And I'd

25   just note that we don't have a chance to verify that

1    information as well.

2              THE COURT:  All right.

3              MR. FELIX:  I don't know how you want us to proceed

4    going forward with that.

5              THE COURT:  Well, I usually like to have a

6    recommendation from the Probation Office as to any bond that

7    might be appropriate, but I usually expect that recommendation

8    to be based on some information more than apparently Mr. Felix

9    has.  I want to get Mr. Felix's opinion.  I value and rely upon

10   an opportunity to develop an opinion that might have some basis

11   to it.  Now, I just appointed the Federal Public Defender to

12   represent you.

13             Is that going to be you?

14             MR. ADMIRAND:  It probably won't be me, Your Honor,

15   but I'd be happy to stand in for purposes of this hearing.

16             THE COURT:  Okay.  When we have sketchy information

17   on which to base a decision on bond, our inclination is to

18   schedule a hearing in a few days during which time --

19             Don't start yet, let me finish.

20             DEFENDANT FULFORD:  I've never been to jail in my

21   life.

22             THE COURT:  Let me finish, please.

23             What I'd like to do is take a recess.  I'd like to

24   give Mr. Felix an opportunity to try to receive additional

25   information, verify it if he can, formulate an opinion in his

1    judgment as to what kind of bond if any might be appropriate.

2              DEFENDANT FULFORD:  Yes, sir.

3              THE COURT:  I understand the Government has no

4    objection to setting some kind of bond.  They --

5              MR. MCLAREN:  No, Your Honor.

6              THE COURT:  They suggest certain conditions.  So if

7    we can have a little patience, then what I'd like to do is

8    recess, come back at the time when Mr. Felix might think is

9    appropriate, and see if you've got a bond recommendation at

10   that time.

11             MR. FELIX:  I think in a case such as this,

12   Your Honor, I think 15 to 20 minutes would be appropriate to

13   get enough information.

14             THE COURT:  That's more than reasonable, all right.

15   So let's just relax for a few minutes, let Mr. Felix do his

16   work, and we'll be in recess for a few minutes.

17             Maybe the Marshal can take these others back.

18             MR. ADMIRAND:  Your Honor, may I speak with her

19   during that recess as well?

20             THE COURT:  Absolutely.

21             MR. ADMIRAND:  Thank you, Your Honor.

22             THE COURT:  This is one of our Defenders.

23             DEFENDANT FULFORD:  Okay.

24             THE COURT:  His office has been appointed to

25   represent you.

1          DEFENDANT FULFORD:  Thank you.

2          THE COURT:  All right?

3          DEFENDANT FULFORD:  Thank you.

4          THE COURT:  Court will be in recess.

5          MR. ADMIRAND:  Thank you, Your Honor.

6          THE COURT:  Can you hang with us, Mr. McLaren?

7          MR. MCLAREN:  Yes.

8          THE COURT:  Thank you.

9      (Recess from 10:52 a.m., until 11:30 a.m.)

10          THE CLERK:  Recall Criminal Action 2016-144, United

11 States of America v Peggy Ann Fulford.

12          MR. MCLAREN:  Good morning, Your Honor; Ryan McLaren

13 for the United States.

14          THE COURT:  Good morning.

15          MR. ADMIRAND:  Good morning, Your Honor; Michael

16 Admirand from the Federal Public Defender's Officer.

17          THE COURT:  All right, Mr. Felix, have you had an

18 adequate opportunity to do some additional --

19          MR. FELIX:  Yes, sir, we did.  I was able to

20 interview Ms. Fulford.  She gave us some information regarding

21 her social history and her background information.  We were

22 able to verify that information with her ex-husband,

23 Mr. Forrest King.  Basically, she's a resident of New Orleans.

24 She was born and raised here.  She left after high school,

25 graduated from McMain High School in 1975, when she went to

1    Spellman University and graduated in 1979 with a Bachelor of

2    Arts degree in history.  She has three children, Your Honor,

3    all boys, ages ranging from -- well, the ages are 35, 26, and

4    20.  She currently lives with the youngest son, Joseph King.

5    He attends school here in New Orleans.  And her father still

6    resides in this city, Mr. Donald Barard.  He lives across the

7    river.

8            She currently works for -- well, she's a part owner

9    in JPB Associates -- and Associates, LLC, a property management

10   company where she earns about $3,000 a month.  Given the nature

11   of this offense, as well as the requests from the Southern

12   District of Mississippi, she's going to be resigning from that

13   employment, but she will be supported working as a personal

14   assistant to her ex-husband, Mr. King, with Valencia

15   Healthcare.

16           No problems with health, mental health, drugs, or

17   alcohol.  She does have a passport.  She's traveled throughout

18   Europe.  She's also traveled to China, Mexico, and Africa.

19           Given that information -- the criminal history,

20   Your Honor, I think she has one other arrest in Georgia for bad

21   checks and that charge was nol-prossed.  That's the thing that

22   popped up in our system.

23           DEFENDANT FULFORD:  Really?  I never got arrested for

24   it though.

25           MR. FELIX:  This is on the rap sheet.

1          DEFENDANT FULFORD:  Oh, okay.

2          THE COURT:  It was nol-prossed.

3          MR. FELIX:  Given that information, Your Honor, I

4     would like to read the recommendation for the Court as far as

5     bond is concerned.

6          THE COURT:  Yes, sir.

7          MR. FELIX:  We're recommended that she be released on

8     a $25,000 unsecured appearance bond with the following special

9     conditions:  That she is to submit to supervision by U.S.

10    Probation; she is to surrender her passport to U.S. Probation;

11    she is not to obtain a passport or other international travel

12    document; her travel is restricted to the continental

13    United States; she is to report every and all contact with law

14    enforcement personnel to U.S. Probation.  Additionally, these

15    are the conditions that the Southern District of Texas has

16    recommended, that she has a financial restriction, Defendant

17    shall not apply for any new credit of any kind.  And she's also

18    to have an employment restriction.  Defendant shall not obtain

19    any employment where she has access to the financial

20    information of others, e.g., as a money manager or financial

21    advisor either directly or indirectly.

22          THE COURT:  Anything else, Mr. Felix?

23          MR. FELIX:  No, I believe that should cover it,

24    Your Honor.

25          THE COURT:  What's the Government's position on the

1    recommendation?

2              MR. MCLAREN:  Your Honor, I discussed this with

3    Mr. Felix and we agree with all of that.  There is one thing

4    that I'd forgotten, we were talking about it.  It's any job

5    where she has access to anyone's financial information, also

6    personal identifying information, Social Security numbers,

7    things like that, that's also part of the request from the

8    Southern District of Texas.

9              THE COURT:  To personal data identifiers?

10             MR. MCLAREN:  Personal identifying information.

11             THE COURT:  Any position that you want to express on

12   behalf of the Defendant?

13             MR. ADMIRAND:  No, Your Honor, just that Ms. Fulford

14   agreed to resign from her position in an abundance of caution

15   of these, pending consultation with the Southern District of

16   Texas.

17             THE COURT:  All right.  Well, we'll make that a

18   condition of the bond nevertheless.

19             Did you understand all that, Ms. Fulford?

20             DEFENDANT FULFORD:  Yes, I do.

21             THE COURT:  All right.  Then the Court will accept

22   the recommendation of the Probation Office and impose bond as

23   recommended.  It will be a $25,000 personal appearance bond.

24             DEFENDANT FULFORD:  What does that mean?

25             THE COURT:  That means that you will sign papers

1  promising that if you fail to appear in court, or if you

2  otherwise violate any of the conditions of the bond that you

3  will be liable up to the amount, personally liable up to the

4  amount of $25,000.

5          DEFENDANT FULFORD:  Okay, sir.

6          THE COURT:  It's basically your personal promise to

7  pay that amount of money if you fail to appear in court and we

8  have to go arrest you.

9          DEFENDANT FULFORD:  Okay.

10         THE COURT:  Because if you fail to appear in court we

11 will go arrest you as I'm about to tell you.

12         DEFENDANT FULFORD:  Oh, I'm going to appear in court.

13         THE COURT:  You'd better.

14         DEFENDANT FULFORD:  I've never not.

15         THE COURT:  Okay.  Well, you asked --

16         DEFENDANT FULFORD:  They could have told me to come

17 down.  I would have came down.

18         THE COURT:  You asked me what that was and I'm

19 telling you what it is.

20         DEFENDANT FULFORD:  Thank you, sir.

21         THE COURT:  All right.  You understand what it is?

22         DEFENDANT FULFORD:  Yes, I do, sir.

23         THE COURT:  Your bond is also subject to the

24 following conditions.  You must submit to supervision by the

25 United States Probation Office.

24

1          DEFENDANT FULFORD:  Okay.

2          THE COURT:  You must surrender your passport to the

3     Probation Officer.

4          DEFENDANT FULFORD:  Okay.

5          THE COURT:  You are prohibited; you may not obtain

6     any new passport, or any international travel document of any

7     sort.

8          DEFENDANT FULFORD:  Okay.

9          THE COURT:  Your travel is restricted to the

10    continental United States, the 48 states that make up the

11    continental United States.

12         DEFENDANT FULFORD:  Uh-huh (affirmative response).

13         THE COURT:  You may not travel outside of the

14    continental United States.

15         You must report to your Probation Officer immediately

16    any contact that you might have with any law enforcement

17    officer of any type.  If you get stopped for failure to put

18    your turn signal on, for littering, any contact that you have

19    with a law enforcement officer you must report to your

20    Probation Officer.

21         DEFENDANT FULFORD:  Okay.

22         THE COURT:  In addition the restrictions, the bond

23    restrictions that have been requested out of the Southern

24    District of Texas are also imposed.  It's a financial

25    restriction.  You must not obtain or apply for any new credit

1  of any sort.  You understand?

2          DEFENDANT FULFORD:  Yes, sir.

3          THE COURT:  We're going to make it a condition that

4  you, as you've already done voluntarily, that you resign from

5  your present employment.

6          DEFENDANT FULFORD:  Uh-huh (affirmative response).

7          THE COURT:  And that you may not seek any new

8  employment that involves access to the financial information

9  of others, or access to the personal data identifying

10  information of others such as but not limited to the bank

11  account numbers of others, the Social Security numbers of

12  others, the date of birth of others.  You must not be in a job

13  that permits you that sort of access to personal data

14  identifiers of others.

15          DEFENDANT FULFORD:  Okay.

16          THE COURT:  This includes jobs like money manager, or

17  financial advisor, anything of that sort.

18          Have we covered all the conditions that were

19  requested out of the Southern District of Texas?

20          MR. MCLAREN:  Yes, I believe so, Your Honor.

21          THE COURT:  All right.  Now, in addition to those

22  conditions of your bond which you must comply with, your bond

23  is subject to the same additional conditions that apply to

24  every bond.  As we've already discussed, the first and perhaps

25  the most important is that you must appear in court as

1      required.

2             DEFENDANT FULFORD:  Uh-huh (affirmative response).

3             THE COURT:  Whether you're required to appear here or

4      in the Southern District of Texas, you must appear as required.

5      I tell you that if you don't appear as required you commit a

6      crime which you may be sentenced to a term of imprisonment.  Do

7      you understand?

8             DEFENDANT FULFORD:  Uh-huh (affirmative response).

9             THE COURT:  In addition, if you violate any condition

10     of your bond, I'm going to issue a warrant for your arrest and

11     you're going to be put in jail until your trial.

12            DEFENDANT FULFORD:  Okay.

13            THE COURT:  You may also be prosecuted for contempt

14     of court.  So, please don't make me do that.

15            DEFENDANT FULFORD:  Oh, never.

16            THE COURT:  In addition, if you commit a crime while

17     you're released on bond you're going to be subject to a more

18     severe punishment than you would receive if you committed the

19     same crime at any other time.

20            And, finally, I tell you that it is a crime to try to

21     influence a juror, or to threaten, or attempt to bribe a

22     witness, or any other person who may have information about

23     this case, or retaliate against anyone for providing

24     information about the case, or to otherwise obstruct the

25     administration of justice.  Do you understand those things?

1          DEFENDANT FULFORD:  Yes, sir.

2          THE COURT:  All right, we're going to complete the

3   bond papers for your signature.  In the meantime while those

4   are being prepared, I need to advise you that because you've

5   been charged in this case by a court in another district,

6   specifically the United States District Court for the Southern

7   District of Texas, you have a right to what's called a removal

8   and identity hearing.  That's a hearing where we would

9   determine whether you are in fact the person charged, and

10  whether you'd be ordered back to the Southern District of

11  Texas to answer these charges.  You have the right to waive or

12  give up this removal and identity hearing and voluntarily

13  remove to the district where the charges are pending, which is

14  the Southern District of Texas in Houston.  But before you

15  waive or give up that right or any other right, I want to make

16  sure you get an opportunity to speak with your lawyer about

17  that.

18          Before we set the date for the removal and identity

19  hearing here I'm going to give you the chance to talk to your

20  lawyer about what you want to do, but I'm also going to tell

21  you that under our Rule 20 you also have the right to plead

22  guilty to this offense in this district, but only if you say so

23  in writing, only if you give up your right to trial in the

24  Southern District of Texas where you're charged, only if you

25  consent in writing to trial and further proceedings here in

1   this court, and only if the United States Attorneys both in

2   Texas and here both approve in writing that you can proceed

3   here.  All right?

4           I know that's a lot to swallow and understand.  If

5   you need time to consult with your lawyer about those rights,

6   I'll certainly give you that time.  You don't have to make that

7   decision now as to whether you want to plead guilty here or do

8   you want to go back to the Southern District of Texas.  But

9   before you make that decision I just want to make sure you have

10  the opportunity to talk to your lawyer.

11          Now, do you understand your rights concerning removal

12  and transfer?

13          DEFENDANT FULFORD:  Yes.

14          THE COURT:  Okay.  All right.

15          DEFENDANT FULFORD:  I do.  He explained that to me.

16          THE COURT:  Do we need to set a removal and identity

17  hearing here?

18          MR. ADMIRAND:  No, Your Honor.  Ms. Fulford and I

19  have both signed and executed the Waiver of Rule 5 and 5.1

20  hearings, which I'll present.

21          THE COURT:  Very good.  All right.

22          Ms. Fulford, is this your signature that appears on

23  this Waiver form?

24          DEFENDANT FULFORD:  Yes, sir.

25          THE COURT:  Do you understand that by signing this

1   form you give up your right to an identity and removal hearings

2   here.  In fact, you're giving up the right to a detention

3   hearing, but I've already made that moot because I've given you

4   a bond.  Is that what you want to do, you want to give up your

5   rights to those hearings here?

6             DEFENDANT FULFORD:  Uh-huh (affirmative response).

7             THE COURT:  All right.  Have you also decided that

8   you want to consent to further proceedings in Texas?

9             DEFENDANT FULFORD:  That's correct.

10            THE COURT:  Okay.  Is that your signature also,

11  Mr. Admirand?

12            MR. ADMIRAND:  Yes, it is, Your Honor.

13            THE COURT:  The Court approves the Waiver of the

14  Removal and Identity hearings here and they won't be set.

15            Now what else do we need to do?  All right, we've

16  made contact with the court in the Southern District of Texas

17  in Houston.  They want you to appear there -- do you have a

18  piece of paper to write this down?

19            Are we going to give her a copy of this?

20            THE CLERK:  I'll make her a copy.

21            THE COURT:  Okay, we'll make you a copy of this.

22            DEFENDANT FULFORD:  Thank you.

23            THE COURT:  They want you to appear at the

24  United States District Court, Southern District of Texas,

25  515 Rusk Street, 7th Floor, Houston, Texas 77002, Courtroom

30

1    Number 703 on December 22, 2016 at 10:00 a.m.  All right?

2              Let the record reflect that the Clerk has given

3    Ms. Fulford a copy of the written notice of the date, time, and

4    place of her next appearance in the United States District

5    Court for the Southern District of Texas in Houston.

6              You understand when you're expected to appear in that

7    court in Houston, Ms. Fulford?

8              DEFENDANT FULFORD:  At 10:00 a.m., yes, sir.  I do.

9              THE COURT:  You understand what date and place?

10             DEFENDANT FULFORD:  Yes, December 22nd, which is

11   Thursday.

12             THE COURT:  All right, very good.

13             DEFENDANT FULFORD:  Uh-huh (affirmative response).

14             THE COURT:  Anything further in this matter?

15             MR. MCLAREN:  No, Your Honor.

16             THE COURT:  The Defendant is released on her bond

17   after processing.

18             THE CLERK:  Here's your bond papers.  You need to

19   keep them on you at all times.

20             DEFENDANT FULFORD:  Okay.

21             THE CLERK:  That concludes the docket.

22             THE COURT:  Court is in recess.

23             MR. MCLAREN:  Thank you, Your Honor.

24             THE COURT:  Thank you.

25             MR. ADMIRAND:  Thank you, Your Honor.

1              DEFENDANT FULFORD:  Thank you, Your Honor.

2         THE COURT:  You're welcome.

3                        *    *    *    *    *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T E**

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**S/Ann B. Schleismann**               **12/20/16**
 **ANN B. SCHLEISMANN**               **DATE**